Let's turn to the next case on argument schedule today, which is Millberg LLP v. Drawrah Limited, 20-2500. Let's see, we have counsel here. Mr. Dayhill for the appellant. Yes, good morning, Your Honor. And Mr. Oslander for the appellee respondent. We can't hear you, Mr. Oslander. Just make sure your microphone is working. How about now, Your Honor? Perfect. Good. We just want to make sure technically we're all set. So, Mr. Dayhill, I have it noted that you would like to reserve two minutes for rebuttal. Yes, Your Honor. Thank you. So I think we are ready to proceed, Mr. Dayhill. Thank you. Good snowy morning to everybody, and may it please the court. I am William Dayhill from Dunnington Bartholomew Miller and counsel for the petitioner appellant Millberg LLP. Millberg seeks reversal of the ruling below, which dismissed the petition to vacate an arbitration award with prejudice because, one, the court misapplied pleading standards to dismiss the petition to vacate based on an alleged insufficient diversity jurisdiction pleading, and two, the court below ignored inter-carbon and myriad cases following it. When the court dismissed the petition to vacate for untimely service beyond three months, which is a misapplication of a statute to service on a foreign respondent when the statute does not address service and therefore timeliness for a foreign respondent. Respectfully, the court should reverse the court below remand so the petition to vacate can proceed to the merits on summary judgment as contemplated by the FAA. Now, I'm prepared to address both those issues, but was, with the court's permission or was acceptable, was going to start with the timeliness issue. The court below erred, as I mentioned before, because it purely ignored inter-carbon, and the court below applied 9 U.S.C. 12 to a foreign respondent as if that was a clear-cut choice to be made in this particular case. Respectfully, the court should have considered the factors first addressed in the Southern District opinion of inter-carbon 1993, which has been cited routinely by courts since then, which looks at the unique circumstances of arbitration, fairness, notice, particularly where, in a case like this, there's clear-cut jurisdiction over a pardon. I'm going to jump in a little bit ahead of the six-minute mark, and I apologize for that. You talk a lot about inter-carbon, but it's a district court opinion, right? It's not binding on us? A hundred percent, Your Honor. That is correct. And we perhaps focus our attention to the extent you think that there is. On the binding precedent, that of the Supreme Court or of this court, that would actually potentially constrain or guide our decision, we understand certainly that inter-carbon may perhaps be persuasive, and that's fine, but could you just lead by telling us what are the boundaries of precedent, aside from where you'd like us to go, but what are the guideposts that bind us? Well, I would say, Your Honor, we've not found anything within this circuit nor at the Supreme Court level, to the extent you're asking, dealing with this express issue. The only circuit court that we've seen that has addressed this issue, and again, this would at best be persuasive, is the D.C. Circuit, which itself doesn't deal with any of the issues raised in inter-carbon. Perhaps direct your attention to, and I'm probably going to get the name of the case wrong, but I think it's something like Florescythe, is that how we pronounce it? The Second Circuit decision, which is a little bit different from some time ago, but it seemed to suggest that the three-month deadline in Section 12 is binding, and I think there was language to the effect that there is no common law exception, that this is a common law exception. So, would you just address Florescythe and how that, in your view, why it applies, why it doesn't apply, or is not relevant? I would argue that it doesn't apply, it's not relevant, because it didn't deal with a foreign respondent. It dealt with all of the cases that are cited by the court below, as well as by the respondents here, deal with precedent, that deal with the specific circumstance of a domestic service on a domestic party. Why does that statement that it made, that there is no exception under the common law to this binding three-month deadline, what is it that makes a foreign respondent not fall within that statement that we made? Two reasons, Your Honor. Number one, because the statute itself doesn't speak to service on a foreign respondent, it only speaks to service within a district, whether the district in the court sitting or district within the United States. In fact, that statute itself also still contemplates U.S. Marshal Service, so it is somewhat out of date. Pause there to make sure I understand your argument, Brian. You're suggesting that because the service of process method part of section 12 could not apply in any conceivable world to a foreign respondent, then the whole section 12 itself goes out the window. In other words, the three-month deadline also goes completely out the window when you have a foreign respondent, that all of section 12 by definition is now inapplicable? Your Honor, the argument, the position I would take is that what needs to be taken into account are the facts of the particular case, looking at what the foreign service says. Help me with the statutory construction argument first, though, because again, if you have section 12, I understand your argument that the two sentences about method of process don't apply. And I thought you were then arguing that if those sentences don't apply, the first sentence similarly does not apply. Excuse me, Your Honor. Yes, I am making that argument because of this. In your view, is there no deadline? No, Your Honor. It would have to be construed in a manner consistent with the idea of providing at minimum notice within the time period or as close to the time period that's set forth in the statute as a guideline. In fact, if you look at the cases that apply the concepts found in inter-carbon, including inter-carbon itself, there is at least notice within the time frame contemplated by the statute. So I wouldn't suggest throwing the whole statute out. You're suggesting that the first sentence of section 12 does textually apply to foreign respondents because it says that notice must be provided within 90 days? Well, it's within three months, but it's also, well, it did make a difference in this particular case. But the argument, Your Honor, is that the statute speaks of notice, that service of notice of motion would be made within a three-month time period. What I'm stating instead is that, literally speaking, that sentence cannot apply to a foreign respondent because where, for example, you have a convention service, it's impossible within three months. It just literally is impossible, and the facts of this case demonstrate that as well. So the argument that we would make is that if the statute needs to be given at least guidance, it doesn't address the foreign respondent, but rather than ignoring its entire text and say, well, there's no rules that apply to a foreign respondent, we would argue that if you look at the fairness concept that is addressed in inter-carbon, the reasonableness of notice, the lack of prejudice, one could still determine whether or not that the statute has been met for commencement purposes. I guess I'm having trouble then understanding. So you're saying that we should apply, I guess, for lack of a better word, the spirit of the statute, that you're saying that because the words of the statute cannot be complied with, the spirit, we're supposed to somehow discern its ineffable essence. Well, I hope I can give a better response then. That wasn't a very charitable... No, no, no, no, no, but that's... May I ask just a few questions about how this all played out? Sure. Where were you in the three-month process when you first filed your action to vacate the judgment? Where were you in the three months period? We were on the three-month deadline. The last day, right? That's correct. Why should a court be tolerant of your difficulty in serving when you wait until the last day? To file the action. And in filing, do not, at that time, while you were still within the three-month period, at that time, seek an adjournment. I mean, there are any number of circumstances where courts will entertain adjournment applications made within a time for filing, but not after it's run. Well, actually, Your Honor, first off, there actually is clear precedent that the time period, again, our argument is it doesn't apply, but the time period cannot be extended. So that we look clearly at that, number one. But you sought an extension. You sought and obtained an extension from the district court, right? Yes, but I would note that it came up in a different circumstance. The, we filed the action, the court issued an order, right, the same day, directing that service be made within 21 days. So it was already directing service be made outside of the three-month time period. We noted back to the court that in this case, since we had foreign respondents, there wasn't, it was not possible to serve within 21 days, that we would need additional time because of the Hague Convention, which eventually we got. Well, not right away. First, you approached defense counsel, or you approached counsel for your adversary and asked them if they were authorized to accept service, right? We did, Your Honor, in the hopes of avoiding- And they said no, and that's when you went to the district court and asked for an extension, or do I misunderstand the chronology? Respectfully, I think there's a slight misunderstanding. So the very first thing that happened, the court issued an order, one saying, correct your jurisdictional pleading to make it more clear. Number two, this is the schedule upon which you will affect service within 21 days. At that time, we had already made the request to the defendant, to a respondent, to accept service. They declined. And at that point, when they declined, and we were still within the 21-day period that the court had set, we advised the court that either we, A, need an extension of time beyond that which the court had set to serve, or unless the service on the email to counsel was deemed effective service. So the purpose of needing the extension was because we could not meet Hague Convention service in 21 days. But again, I want to emphasize, we were already beyond the three-month time period when the court was, in our view, operating consistent with InterCarp and because there was not a discussion about whether or not we needed that time in order to meet the three-month time period. It was talking about something separate. Can I ask a question? You make a number of assertions throughout your brief that the amount of time it took to serve Hague proves that one cannot serve notice through the Hague Convention within three months. And as far as I can tell, you seem to say because it took us four months, it could not have happened faster. I was trying to look through the record, and it looked like a number of the defendants were served on July 5th and a number later in July. What wasn't clear to me was when you transmitted to the central authorities of Germany and Luxembourg the request for service. I don't recall. I can tell you it was by the end of May, because if you look, there's an order by the court that permitted us, I think it's on May 22, to shrink the number of documents that needed to be translated. So therefore, it went out promptly thereafter. The question then is, was most of the time then eaten up by translation? And if so, you know, I mean, after, and this is perhaps getting more into the weeds than I need to, but it is subject of some curiosity to me, you know, after service was affected, for example, on July 5th, you know, you didn't file something on the on the docket until September 22nd. Was that a delay in returning the proof of service to you? Yes, Your Honor. So the way I understand it, the service was affected at different parts of July in Germany and Luxembourg. But at that point, all that does is then the proof of it goes back to the central authority. The central authority then prepares the papers that basically report that the service has been completed. Those papers then need to be translated. They were sent back to us and they were filed. So yes, it may have been that the delivery was made in July in Germany. We didn't get the papers back to file on the docket until September. I want to go back to what Judge Nardini asked earlier. Assume we were to rule in your favor. What would you like our opinion to say about this, about the three month period when it foreign dependence, foreign service? The way I would anticipate it, because I would have asked me the same question and the way in which I would articulate it, Your Honor, Judge Walker, is whether under the facts, a foreign respondent is given prompt notice, is already subject to clear jurisdiction, is not subject to prejudice. There's been no effort to delay by the party who's the moving party and the three month period cannot reasonably be met. Really, there's a lot of moving parts there, but that's the question I have then is your efforts to affect service prior to the time that you called the attorney for the opposition and asked for that attorney's authority to affect service, to accept service. What had you done prior to that? And how do you meet your own criteria that you just outlined of prompt due diligence and effort on your part? Well, by providing the notice to them within the three month time period provided in the statute. I mean, Kendall, we had a 33 page- In fact, you provided notice at the end of the three month period, right? The last day? That's correct. It was after business hours. So there's no way that service could have been complied with, even if it had been domestic. It was just everything was way too late, wasn't it? Respectfully, Your Honor, the reality is we have a 33 page opinion arbitration or substantial time was spent determining whether or not to proceed to prepare the papers to pull the trigger to go ahead and do this. Yes, candidly, if what you're suggesting is could we have an advance saying, look, we're planning on making a motion, will you accept service? We didn't do that. But realistically, that's the process it took us to- I'm not sure the record here is the most favorable one for you. That's of what happened on your side in terms of asking for relief here. One can see how the three months would be constraining as to a foreign defendant. But on the other hand, one would have to, I think, make some kind of showing of due diligence and reasonable efforts to effectuate the service prior to the end of closing business of the last day of the period. The other thing I'll add is it appears, again, from what you filed on the record, that service was effectuated within about two months. Now, it took longer for you to get that proof of service back. But if the latest, I think, was a July 29th service, and a lot of those folks were served on July 5th. So it looks like actually the Hague Convention is not quite as dramatic as you make it out to be in the sense of always and everywhere taking longer than three months. It looks like in every instance, service took less than three months. Now, it took longer for you to get the paperwork back and get it filed and prove to the satisfaction of the court that you did meet the three-month deadline. But it looks like you did. Well, that it took less than two months. I think, again, Your Honor, I think there was nothing available to us, to my understanding, and I don't want to go beyond the record too far. But to my understanding, just because the delivery was made, didn't end the process even under the Hague Convention. Even before us getting the paperwork back, the paperwork had to go back to the central authority. The central authority then prepares its report, which then gets sent. My point being that later, and maybe it would have taken until September, that you could have said to the district court, okay, now I have proof that I served notice of this within three months. But can I go back to a completely different issue? And I know we're keeping you beyond your time, and I apologize. I appreciate the opportunity. Which is the diversity allegations. Yes. And it took you a long time, or your party, I don't know about you, but it certainly took the Milberg a long time to get its diversity allegations straight. And even when you didn't, when you got to try number three, I mean, there's still some, quite some ambiguity there. It's like, are or were. And I have to say that when I read that, I'm not sure what Milberg means. That they are, or maybe some of them are and some of them were, or some of the partners or other of the partners. And it seems like that was, I mean, this isn't this, I come from a criminal background, so I don't know how easy or hard it is to allege diversity, but I would have thought this is pretty easy. You say, at the time we filed, the partners were A and B. A was a citizen of New York. B was then a citizen of Iowa. Done. Yes, Your Honor. Although I also believe a fair reading of the of the allegation in the third effort, as you've noted, is it also reads that all relevant times partners were citizens of a state. I know it says there's a disjunction. I realize there's a disjunctive and a conjunctive would have been better. But I think what the argument I have with regard to the district court's interpretation is that what rather putting aside whether the appropriate pleading standard is this motion standard or pleading standard, the court in this particular case, we've read a negative inference into language. Well, I think that what's curious is the district court took the view that the person who filed the declaration, who was of counsel to the firm, though, with long standing ties, that it wasn't clear he had personal knowledge. And so I guess what's curious is on a third try, why didn't you just have the partners submit something as to their residency? The simple answer is, Your Honor, I'm working with, you know, working with my client and made a request and they right. But you understand that the court now we have to deal with whether the court um, erred in having enough questions about the submission to conclude that you just hadn't satisfied it, hadn't satisfied jurisdiction. Tell us why we shouldn't reach that conclusion. Your Honor, I would point to the Van Buskirk case, which is, which makes reference to and utilizes 28 U.S.C. 1653, which permits defective allegations of jurisdiction may be amended upon terms, if it appears, you know, at the trial or appellate court. And here, putting aside. That doesn't say third to fourth time. I mean, that's the concern here. There comes a point at which we recognize the district court has given the parties a chance and can say enough. I mean, I don't think the case you cited involved two prior chances to clarify this. Actually, the case actually involved what was explained in the opinion to be blurry photocopies of licenses and other things which caused questions of the veracity of what was being said. Right. Here, there's been no demonstration or suggestion anywhere that there somehow is not the jurisdictions here, whether it's not been pled to the clarity that the court has asked for. Nonetheless, it is there's not been any basis to doubt that that we can create jurisdiction. The question is enunciating it clearly enough because under those courts and the standards of 1653, because jurisdiction has always existed. I know I'm not sure if Judge Nardini. Did we lose Judge Nardini? You heard enough for me. Yes, I'm going to email the judge right now. We're going to get it. Just bear with us. I'm noticing on the emails that Troy White's laptop froze. Judge Nardini has said that his zoom has dropped. Yeah, I assume he's trying to get back to us. That is, that is correct. Your Honor, the laptop, just the images for me froze. I have been able to still go forward, but I'm trying to get back to you. Contact the judge now. IT maybe call him also because right now so we should be up shortly. If it doesn't work out, we might consider oral argument. I mean, just just do it, do it by audio. I apologize. I seem to have had some internet outages due to the blizzard here in Connecticut. I apologize. I don't want to keep anyone any longer than necessary. But were we on pause or did people continue to chat? I made the most brilliant few statements, actually. But no, I'm sorry. I'm just following up on your earlier remarks. Yes. Yeah, no, I actually I don't know that there's anything for I mean, obviously I want to pass. I'll answer more questions or if you want to pass it over to Mr. Ouslander, but whatever the court prefers. That's fine. We move to Mr. Ouslander. And again, I thank you for your patience. May it please the court, Jay Ouslander for the appellees. And I think I just want to begin by saying that if we could sum up the arguments on this appeal, what the bill is, I think we could say that it's too little too late and unprecedented. And I'll start with too little. And I'll and I'll begin with diversity since that is where we left off. The first petition here was filed on May 6th. And the last attempt to cure that petition happened over six months later by the declaration of Michael Spencer in December. So there was a six month period. In that six month period, the first petition to diversity and federal question. The district court the very next day to a spot day said, you're going to have to give me more on diversity, among other things, or I'm going to dismiss this pleading. And so on May 9th, they came back and they filed the second petition. And in that petition, Milberg alleged that it was a partnership of one with a citizenship in New York. Partnership of one is not a valid partnership under Section 10 of New York's partnership law. And so then on October 11th, after there had been some various communications district court, they came back and they said, well, we actually are have two partners who were or are citizens at all relevant times. And then on the dismissal motion, Mr. Spencer, who only claimed to be fully familiar with the workings of Milberg and the citizenship of its partners, submitted his affidavit rather than his declaration, rather than Milberg submitting a declaration, for example, of the partners who had actual knowledge of when they were citizens of New York at the time of the commencement of the petition. But let me ask you, counsel, pleadings of diversity, like pleadings of the claim, only have to be only have to satisfy a plausibility standard. When an individual who has been with the firm for many years pleads that or asserts in a at the relevant time, which we assume the relevant time is the filing. Why isn't that a plausible pleading of diverse jurisdiction? Because when it comes to to pleading diversity, first off, the case is the law in the circuit is that inferences we don't give the inferences to the pleader. The pleader has a burden of affirmatively demonstrating that citizenship. And here I'm not asking for an inference. He pleaded that they were citizens at the relevant period. Well, he pleaded that they were that they were or are at the relevant period rather than at the time that the petition was served. And what I would say that the relevant period that is the relevant time. Now, if he if he was mistaken about that or something else were to emerge later on. But this is the pleading. Why isn't it plausible that that therefore he satisfied diversity jurisdiction? Because when we look at this particular declaration, and I will say I will say this, Your Honor, for for for for argument's sake, boy, I've been a partner at my firm for almost 20 years. I've got lots of different partners. And I can't tell you that I know what the citizenship is. Mr. Spencer, when he put in his declaration, instead of saying, I know he just said I'm involved with these people, and I know them. That's not enough to even come up, especially after six months to give the district court the and and especially one other point after the district court six months earlier said, you've got to allege the citizenship of Milberg in its entirety. So Milberg was told exactly what it had to do six months earlier. And on its fourth effort, it comes back with a declaration by somebody who doesn't say he knows. He puts in a declaration. So he wants it to have evidence. Otherwise, you don't need a declaration. He puts in a declaration. He says, I'm familiar with my with my ex partners or my partners. And I'm familiar with the firm because I've been there forever. And so they were or are citizens, the district court properly after a six month period of asking Milberg to get it right. And it's not difficult to get it right. I mean, pleading diversity of a limited partnership means you plead the citizenship of each partner. And in fact, the district court told them to do that on May 7th. When you factor all of that in and you look at the months that passed and the numerous attempts and moreover, your honor, remember that they started off claiming that it was diversity and federal question. Then they dropped federal question. Then they said they had one partner. Then they said they had two partners who were or are citizens of the state. The district court wanted more after six months, given the vagaries of the pleadings that had come before, given the differences and the different statements that had come before. And this declaration, typically a declaration, right, would be by somebody having knowledge. This declaration on a motion, it wasn't the petition itself. It was in opposition to the dismissal motion, was a declaration not on personal knowledge. And it would have been simple for them to put in declarations by the people that had personal knowledge or that knew or even somebody that could say, I know because I'm his next door neighbor. But none of that is there. And if counsel, can I can I just ask if we had any. Marginal qualms about the subject matter jurisdiction, the allegations, but if we were to ask Mr. Dayhill on his rebuttal to just repeat what he said in the blue brief, which is, look, you know, we've got these two partners at the time of the filing of the petition. They were citizens of the United States. If we were to exercise our discretion, you would agree that we would be allowed to allow them to make a filing supplemental here on appeal and I could clear it all up. I would I would never have that discretion. You may not want us to exercise the discretion, but you would agree that we have the power to do that. Right. I would never attempt to limit this court's power. But I would say is that if the court were going to if the court was going to exercise its discretion, for example, under 1653, it should do so in a case that warrants it. And when you have six months to really I mean, let's face it, this isn't esoteric. And I think Judge Nardini, you were right when you said it earlier on and you talked about, well, coming from a criminal background, you know, but it seems fairly easy. It is fairly easy. And that's why the district court, the day after they filed the first petition, said, hey, look, you have to allege the diversity of all of the citizens. Do it or I'm going to dismiss it. And it goes on and on through multiple iterations of conflicting statements. It's one partner. It's two partners. Then there's are or were in the disjunctive to exercise that power that the court has to exercise that discretion. The court under the cases under 1653 would be looking for extenuating circumstances that would say, well, we're going to go out of our way here to allow this to be rectified. Those circumstances don't exist here. Can I ask you, because you only have a couple of minutes left. Would you mind spending a little time on the question of timeliness? And let me just pose a question to you. When you look at cases like Flores sites or how we pronounce that, which talk about there being no common law exceptions, you know, that case, of course, was about the timeliness of raising a defense to a motion to confirm an arbitration decision. There are lots of cases, particularly from the Supreme Court since then, saying that we presume this is the Supreme Court presumes that when Congress enacts a statute of limitations, it does so against the background that equitable tolling will apply. Unless Congress affirmatively says something to the contrary to make clear that it doesn't. So I guess what I'm wondering is, given that Flores sites seem to be dealing with a particular issue, which was what's the deadline for raising a defense against confirmation? Is that language about no common law extensions really dicta? And would we be obliged to then follow the Supreme Court's pretty consistent rulings that equitable tolling applies unless Congress speaks clearly? Contrary. And are we then potentially in a world where I suppose your best argument would be even if equitable tolling applies, your opponents don't deserve to get it because they waited for the last minute, etc. Yeah. Yes, Your Honor. I would say I would say a number of things. First off, I think the court in Florestan, which has subsequently been followed by this case, and then applied by the district courts uniformly very recently by in the Triumph case in 2011 in Anglin in 2017, in Marshak and Vector in 2020. I would say that that ruling about section 12 actually applies and is a holding itself about the statute saying, look, the whole idea of petitioning to vacate an award is a creature of statute. That's what it is. That's why there is no common law exception to it. And that is why this court in Florestan specifically said there is no common law exception to the three month limitation period. And that is and then, of course, Anglin and Triumph and the other cases in different fact patterns have discussed section 12 as being strictly construed and not subject to equitable tolling and even absolute. And that is, of course, what the case says. I think that it is not. I think that is how section 12 is deemed to be because it's merely a creature of statute and not a creature of the common law. I think you're right. I think there's something in the record, though, that I want to address. It isn't that they actually went ahead in this case, even if even if the court were to assume that it should it should apply some equitable deference in certain instances on into section 12, which is not thus far the law in the circuit at all, with no exceptions. There are none thus far. But even if the court were going to do that, this wouldn't be the case, not merely because they served or I should say not because they served the petition on the last day of the three months. They actually served it on the day after the last day of the three months, because rule six under under Anglin, for example, says that you actually start the counting on the day of delivery. So the last day would have been May 5th, not May 6th when they served the petition. But even if you were going to assume again, so now assume equitable tolling should apply and now assume it's May 6th and not May 5th. Well, as your honor and as the court pointed out earlier, there was no reason none in this instance why they couldn't get the service done. Your honor pointed out that they appeared to have affected service under the Hague Convention by July. In fact, they first were able to do it on June 28th and they first told the court that they were considering Hague service on May 14th. That's long past even their view of when the last day is. So even if you accept their view, which cuts against Anglin, that the last day was May 6th and not May 5th. They didn't even consider Hague service until May 14th of an award to vacate an award that they got on February 5th. So they're well beyond it. If they were considering it on May 14th and they did the first service by June 28th, it's hard to imagine an argument that Hague service within three months would have been impossible. It also defies credulity is that if you really thought that make an application to the court early on under rule four and see if there's some substitute service that the court would allow, nothing happened at the very best. As the district court said at the latest, nothing happened until May 6th. We say that's one day too late under those cases that we've cited. But even if it isn't, they waited until 953 in the evening on May 6 to ask if we would accept service. There can be no question that they didn't start drafting the petition on May 6th. So at some point, they could have reached out to us. They could have attempted service. They could have gone to the court. They could have done something. And frankly, they certainly didn't have to wait until May 5th or May 6th. So, A, I think Florissant is binding precedent. There is nothing that cuts against it. Since Florissant have uniformly in cases not related to the method of service, but to timeliness have applied it, and even in the words of, I believe it was Amlin, absolutely. And here, there's just no equitable basis to go ahead and to say that Millbrook can go ahead, fix its jurisdictional pleading after four attempts over six months after it was warned, basically on day one after it filed, that the court would dismiss the petition if they didn't get it right. And there's no reason to go ahead and apply equitable tolling to section 12 when they waited beyond the last day to even approach us. And until May 14th, which even they would admit is a week past the last day to tell the court that they were considering paid service. Equity doesn't require overwhelming indulgence. Equity is based on fairness. And equity certainly shouldn't be based on a willingness to be blind to a party's requirements that it failed to adhere to time and time and time again over months. That is, I hope that answers your question. Okay. That does. Thank you very much. And we appreciate that. Mr. Dayhill, I believe that you have reserved two minutes for a rebuttal. Would you mind, Mr. Dayhill, you're on mute. Could you unmute yourself? Sorry about that. Yes. Would you be able to just begin, and I have no idea whether we're inclined to do this, but if the court were to decide that we wanted to give you one opportunity before us to amend your subject matter jurisdiction, your diversity allegations, would you be prepared to send us something, and I'm going to make this happen within a week, that contained first-person affidavits of the partners who were the partners at the time of the filing of the petition, saying we are the two partners who were the partners at the time, and we are citizens of, you know, whatever, Oklahoma, and I'm going to do that. But is that the sort of thing that you'd be prepared to do? 100 percent, absolutely, Your Honor. You know, we would undertake that. The only reason I can't speak to timing is because I don't know where people are, but we would make that effort and don't see why that couldn't be done, and would appreciate that opportunity to address, you know, the circumstance. One, you know, thing I know with regard to, you know, Mr. Auslander and talking on the jurisdictional point, you know, I can understand that he's kind of expressing an idea of the court perhaps is fed up, but I don't know that being fed up as such is enough to distinguish a right. I think there's never been a bona fide question as to whether there is, in fact, diversity here, and counsel has never said differently, and an opportunity to provide additional support directly dealing with the issue from the two individuals, Ms. Tadler and Mr. Phillips, providing that they were citizens of the United States at the time this was commenced back in beginning of 19. We would do that and welcome that opportunity to address this court's concerns. Even if we assume that, we'd still be left with the service question, right? That's correct, Your Honor. That's only one of the two. Your adversary talked about why equity would not intervene in this circumstance. Is it indeed equity that you have to appeal to here? Well, it was actually the equitable, you know, the idea of an equitable extension of the statute of limitations actually is not really the way in which the cases that we've relied upon focus on it. What they talk about is, but they do use the word fairness, which, of course, is an equitable principle, but the terminology that's used is whether or not under the circumstances, it would be fair where the party has notice. That's an appeal to equity. I'm just asking whether, you know, you have to basically demonstrate that the district court's actions here were inequitable. Your Honor, my response would be that we had a 33-page opinion. We had determinations to make as to whether to move or to appeal, the basis upon which, and under no circumstances could it be suggested, quite candidly, that all of that can be done and do Hague Convention service within the time period of three months. It's just not feasible. I do note, by the way, that the June 28th service was done outside the Hague because it was a party in Lichtenstein. It wasn't under the Hague Convention as one of the many parties. But under the circumstances here, a party who appeared in New York in this arbitration, the party who was represented by the same council before that arbitration, during the arbitration, and here today, were provided within three months the notice that we are moving to vacate this, and that the fact of whether or not it needed to be translated and we had to go through the hoops to try to serve this shouldn't be held against, you know, the statute doesn't reasonably apply to a foreign respondent is that the answer is that what's inequitable would be for the respondent here, again, having participated, agreed to jurisdiction in New York, participate in arbitration in New York, then saying, well, you weren't able to serve me by proper service in Germany and in Luxembourg. Therefore, you don't get an opportunity to rehear your petition to vacate. That's the way in which I think equity would balance the equities in our favor. Well, thank you both very much. Very well argued, very helpful arguments, and we appreciate your patience with these technical challenges. We will take the case under advisement. I'll